**E-FILED**
Tuesday, 28 September, 2004  04:43:50 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| RUFUS JOHNSON, | ) |
| Plaintiff, | ) |
| vs. | ) NO. 02-2260 |
| ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

NOW COMES, the Defendant, ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, by and through its attorney, Lisa Madigan, Attorney General of the State of Illinois, and hereby files its Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and CDIL-LR 7.1(D).

I.    **INTRODUCTION**

On or about December 18, 2001, Plaintiff filed an EEOC charge of discrimination against his employer, Illinois Department of Children and Family Services (DCFS). In that charge Plaintiff alleges that he was discriminated against based on his race when he received an oral counseling for breaching confidentiality. In addition, Plaintiff generally claims that since February 8, 2001, his work was subject to more scrutiny than his non-black co-workers. (Exhibit B). Plaintiff filed his Complaint on or about December 16, 2002, alleging that he was disparately treated and subject to racial harassment in violation of Title VII.

Defendant is entitled to summary judgment for one or more of the following reasons: (1) all occurrences prior to February 21, 2001, are beyond the 300 day filing requirement; (2) the allegations of racial harassment are outside the scope of the EEOC charge; (3) Plaintiff failed to prove that he suffered an adverse employment action; (4) Plaintiff failed to prove that similarly situated employees received more favorable treatment in the terms and conditions of employment; (5) Plaintiff failed to prove that he was the victim of a severe or pervasive work environment; and (6) Plaintiff failed to prove employer liability.

WHEREFORE, Defendant, Illinois Department of Children and Family Services, respectfully requests this Court to enter summary judgment in its favor.

## II.    MATERIAL FACTS CLAIMED TO BE UNDISPUTED

### a. Background Information

1.    At all times relevant hereto, Rufus Johnson was a Child Protection Investigator with the Illinois Department of Children and Family Services (DCFS) for the Urbana field office in Urbana, Illinois.  (Complaint).

2.    The Urbana field office is located in the Central Region of DCFS.  (Exhibit E).

3.    The Central Region of DCFS is comprised of three sub-regions: Peoria, Springfield, and Champaign.  (Exhibit E).

4.    There are five field offices within the Champaign sub-region which are located in the cities of Decatur, Danville, Urbana, Bloomington, and Charleston.  (Exhibit E).

5.    From July of 1998 to November of 2001, Nora Harms held the position of Child Protection Supervisor in the Urbana field office.  (Exhibit C).

6.     As Child Protection Supervisor, Nora Harms was responsible for a team of Child Protection Investigators, known as the 3B09 team.  (Exhibit C).

7.     From July of 1998 to November of 2001, Rufus Johnson was a member of team 3B09 and reported directly to Nora Harms.  (Exhibit C).

8.     From March 1, 2001 to November of 2001, Nora Harms reported to Jamie Ralph.  (Exhibit D).

9.     Beginning in March of 2001, Jamie Ralph held the position of Child Protection Manager for the Champaign sub-region.   (Exhibit D).

10.     Jamie Ralph reported to Becky Jones in the Champaign sub-region.  (Exhibit D).

11.     Beginning in April 2001, Becky Jones held the position of Assistant Regional Administrator within the Champaign sub-region.  (Exhibit E).

12.     Becky Jones was not the Assistant Regional Administrator for the Springfield or Peoria sub-region.  (Exhibit E).

13.     Neither Becky Jones nor Jamie Ralph had any job responsibilities for the Springfield or Peoria sub-regions.  (Exhibit E).

14.     Beginning in April 2001, Becky Jones reported to the Regional Administrator for the Champaign sub-region, Deb Kennedy, an African-American female.  (Exhibit E).

15.     Mr. Johnson's job duties as a Child Protection Investigator are as follows: Under direction, conducts investigations of reported child abuse and neglect cases; acts as liaison with local law enforcement agencies and the State's Attorney's Office; conducts interviews with clients and other appropriate persons to obtain pertinent information

regarding alleged abuse/neglect; prepares reports and records of investigative findings. (Exhibit L).

**b.  Alleged Adverse Employment Actions**

16.    In 2000, Mr. Johnson received a ten day suspension that was ultimately reversed.  (Exhibit A, p.47).

17.    Mr. Johnson believes that Becky Jones forced Nora Harms to give him a bad job evaluation for the period January 31, 2000 to December 31, 2000.  (Exhibit A, p.75).

18.    Mr. Johnson was issued an oral reprimand on April 25, 2001 for violating DCFS confidentiality policy, which was later reduced by management to a counseling session.  (Exhibit D).

19.    Mr. Johnson believed that management was watching him.  (Exhibit A, p.39).

20.    Mr. Johnson assumed management was watching him because he was black.  (Exhibit A, p.40).

21.    Mr. Johnson felt that he was being discriminated against because Steve Bryson was taken out of case rotation while he was not.  (Exhibit A, p.37).

22.    Mr. Johnson testified that the only investigator on team 3B09 that he could recall being taken out of case rotation in the year 2001 was Steve Bryson.  (Exhibit A, p.37).

23.    Mr. Johnson felt he had more cases than his white co-workers. (Exhibit A, p.41).

24.    Mr. Johnson was not the only investigator on Team 3B09 who felt they had a high caseload.  (Exhibit A, p.43).

### c. Alleged Comparables

25.    On April 20, 2001, Lisa Sanders received an oral counseling from her Supervisor, Dawn Bachtold, for breach of confidentiality arising out of the same facts and circumstances that Mr. Johnson was given an oral reprimand on April 25, 2001.  (Exhibit M; Exhibit F).

26.    Lisa Sanders was a Child Case Worker at the time she received her oral counseling.  (Exhibit F).

27.    On April 20, 2001, Pam Wendt received an oral counseling from her Supervisor, Dawn Bachtold, for breach of confidentiality arising out of the same facts and circumstances as Mr. Johnson's oral reprimand.  (Exhibit N; Exhibit F).

28.    Pam Wendt was a Child Case Worker at the time she received her oral counseling.  (Exhibit F).

29.    On April 20, 2001, Sonja Cully received an oral counseling from her Supervisor, Dawn Bachtold, for breach of confidentiality arising out of the same facts and circumstances that Mr. Johnson was given an oral reprimand on April 25, 2001.  (Exhibit O; Exhibit F).

30.    Sonja Cully was a Child Case Worker at the time she received her oral counseling.  (Exhibit F).

31.    Child Case Workers have different job duties than Child Protection Investigators.  (Exhibit A, p. 28; Exhibit F).

32.    At all times relevant to Mr. Johnson's Complaint he was a member of Team 3B09 in the Urbana field office.  (Exhibit C)

33.    Mr. Johnson's Complaint alleges discrimination took place between February 8, 2001 and December 12, 2001.  The members of Team 3B09 during this period of time were Carol Davis-Hargest, Heather Forrest, Rufus Johnson, Lynda Morgan.  (Exhibit C).

34.    Terry Walters was a floater for the Champaign sub-region and was sporadically assigned to Team 3B09.  (Exhibit C).

35.    Carol Davis-Hargest, an African American female, was a member of Team 3B09 and supervised by Nora Harms from June of 2000 until November 21, 2001.  (Exhibit C).

36.    Heather Forrest, a white female, was a member of Team 3B09 and supervised by Nora Harms from November of 2000 until November 21, 2001.  (Exhibit C).

37.    Steve Bryson, a white male, was only a member of Team 3B09 from July of 1998 until March of 2000.  (Exhibit C).

38.    Rufus Johnson, an African American male, was a member of Team 3B09 and was supervised by Nora Harms from July of 1998 until November 21, 2001.  (Exhibit C).

39.    Stacey McAdams, an African American female, was only a member of Team 3B09 from July of 1998 until December 15, 2000.  (Exhibit C).

40.    Lynda Morgan, a white female, was a member of Team 3B09 and was supervised by Nora Harms from February of 2001 until November 21, 2001.  (Exhibit C).

41.    Joseph Simmons, a white male, was only a member of Team 3B09 from January of 2000 until October of 2000.  (Exhibit C).

42.    Marianne Pointer, Charles Cochran, Dave Harman, Mike Fett, and Janis Warwick-Caffrey were all members of Team 3B02, which is a separate investigator team with a separate supervisor.  (Exhibit A, p.16; Exhibit C).

**d. Charge of Discrimination, EEOC Number 210A201121**

43.    On December 18, 2001, Mr. Johnson filed a charge of discrimination in case number 210A201121.  (Exhibit B).

44.    In that charge, Mr. Johnson made the following allegation:  "I began my employment with Respondent on or around December 10, 1993.  My most recent position is Child Protection Investigator.  On or about June 2, 2001, I was accused by a supervisor of violating a company policy and I was given discipline.  My non-black co-workers violated the same policy and have never been disciplined.  My job performance and work is constantly being scrutinized by my supervisors, while my non-black co-workers are not subjected to similar treatment.  I believe I have been discriminated against on the basis of my race, black, in violation of Tile VII of the Civil Rights Act of 1964 as amended."  (Exhibit B).

45.    The June 2, 2001 incident Mr. Johnson was referring to in his EEOC charge was his receipt of an oral counseling for breach of confidentiality.  (Exhibit A, p.26, 27, 30).

46.    Mr. Johnson was not referring to his ten day suspension in his December 18, 2001 EEOC charge.  (Exhibit A, p.26, 27).

47.    The first time Mr. Johnson ever filed a complaint alleging racial discrimination was when he filed his EEOC charge on December 18, 2001.  (Exhibit A, p.22).

48.    Mr. Johnson's EEOC charge states the earliest date discrimination took place was February 8, 2001.  (Exhibit B)

49.    Mr. Johnson's EEOC charge states the latest date discrimination took place was December 12, 2001. (Exhibit B).

50.    Mr. Johnson's Complaint only alleges discrimination from and since February 8, 2001.  (Complaint, par. 5).

51.    On or about December 2001, Mr. Johnson requested a geographical transfer to the DCFS field office in Aurora, Illinois.  (Exhibit A, p.85).

52.    Mr. Johnson began working at the Aurora field office as a Child Protection Investigator on or about March 4, 2002.  (Exhibit A, p.85).

53.    The allegations of harassment contained in paragraphs 7 and 8 of the subject Complaint are not specifically referenced in the December 18, 2001 EEOC charge. (Complaint).

54.    On September 9, 2001, the EEOC issued Mr. Johnson a right to sue letter. (Exhibit K).

**e.  Discrimination Policy**

55.    At all times relevant to Mr. Johnson's Complaint, the Department of Children and Family Services had in place a anti-discrimination policy.  (Exhibit P; Exhibit Q).

56.    At all times relevant to Mr. Johnson's Complaint, DCFS disseminated its Prohibition Against Discrimination policies through its Employee Handbook to its employees.  (Exhibit P; Exhibit R).

57.    Mr. Johnson received a copy of the DCFS Handbook on or about April 25, 1997.  (Exhibit V).

58.    The Employee Handbook explains that reports of discrimination may either be filed internally with the Office of Affirmative Action or externally with the Illinois Department of Human Rights or the Equal Employment Opportunity Commission.  (Exhibit P; Exhibit R).

8

59.     The DCFS Office of Affirmative Action never received an internal complaint based upon racial discrimination from Mr. Johnson.   (Exhibit P).

60.     The DCFS Office of Affirmative Action received notice on or about January 9, 2002 that Mr. Johnson filed an external EEOC Charge of Discrimination.  (Exhibit P; Exhibit S).

61.     The Department conducted an investigation of Mr. Johnson's EEOC charge and submitted its response to the EEOC on or about January 31, 2002.  (Exhibit P; Exhibit U).

62.     Mr. Johnson requested a geographical transfer to the Aurora field office prior to filing his EEOC charge.  (Exhibit A, p.102).

63.     Mr. Johnson never heard management refer to any person in a racial connotation.  (Exhibit A, p.106).

64.     Mr. Johnson never heard of management making any physical threats to anyone in the Urbana field office.  (Exhibit A, p.106).

65.     Mr. Johnson never told Jamie Ralph that he thought he was being treated differently or his work was being scrutinized more than his white co-workers.  (Exhibit A, p.69).

66.     Mr. Johnson testified that he has no proof that Becky Jones discriminated against him.  (Exhibit A, p.67, 68).

III.    **APPLICABLE LAW**

1.      **Standard of Review**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden on the moving party may be discharged by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, "setting forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e). The evidence must create more than some metaphysical doubt as to the material facts. Matsushita Electric Company, Ltd v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1356 (1996); Albiero v. City Of Kankakee, 246 F. 3d 927 (7th Cir. 2001). To defeat a properly supported motion for summary judgment, a litigant may not rest merely upon the mere allegations of the complaint or denials of the adverse party's pleading. Shermer v. Illinois Department of Transportation, 171 F. 3d 475 (7th Cir. 1999). Rather, the litigant's response, by affidavits, deposition, or answers to interrogatories, must set forth specific facts showing there is a genuine issue of fact for trial. (See Shank v. William R. Hague, Inc., 192 F. 3d 675, 683 (7th Cir. 1999) (where the court stated that summary judgment is the 'put up or shut up' moment of the litigation, when a party must show what evidence it has that would convince a trier of fact to accept its version of events)).

A mere scintilla of evidence in support of the nonmovant's position is insufficient, and a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion. (See Amadio v. Ford Motor Company,

238 F. 3d 919, 927 (7th Cir. 2001) (where the court held that a party must present more than mere speculation or conjecture to defeat a summary judgment motion)).

### 2.    EEOC Charge of Discrimination

As a general rule, before a plaintiff may institute an action in federal court under Title VII, he must file a timely complaint with the Equal Opportunity Employment Commission (EEOC) detailing the discriminatory conduct that forms the basis of his allegations.  Hentosh v. Herman M. Finch Univ. Of Health Sciences/Chicago Med. School, 167 F.3d 1170, 1173 (7th Cir. 1999); Bennett v. Roberts, 295 F.3d 687 (7th Cir. 2002).

In order to bring an action pursuant to Title VII, Plaintiff must:  (1) file a charge with (EEOC) within 300 days of the alleged discriminatory conduct; and (2) file a civil action within 90 days after receiving the right to sue letter from the EEOC.  Pack v. Marsh, 986 F.2d 1155, 1158 (7th Cir. 1993); Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985); and Shanoff v. Illinois Department of Human Services, 258 F.3d 696, 701 (7th Cir. 2001).

A plaintiff may only pursue a claim not explicitly included in an Equal Employment Opportunity Commission (EEOC) complaint if the federal court allegations fall within the scope of the charges contained in a properly filed EEOC complaint.  Cheek v. Peabody Coal Company, 97 F.3d 200 (7th Cir. 1996).  In determining whether the current allegations fall within the scope of the earlier EEOC charges, the court looks at whether they are "like or reasonably related to "those contained in the EEOC complaint."  Conley v. Village of Bedford Park, 215 F.3d 703, 710 (7th Cir. 2000); Sitar v. Indiana Department of Transportation, 344 F.3d 720 (7th Cir. 2003).  Claims are reasonably related if there is a factual relationship between them.  Cheek v. Peabody Coal Company, 97 F.3d 200 (7th Cir.

11

1996).  This means that the EEOC charge and the federal court complaint must, at a minimum, describe the same conduct and implicate the same individuals.  <u>Cheek v. W & S Life Insurance Co.</u>, 31 F.3d 497, 501 (7th Cir. 1994).

### 3.    Disparate Treatment / Race Discrimination

Plaintiff alleges that the Department discriminated against him on account of his race.  Because Plaintiff presents no direct evidence of race discrimination, he must proceed under the burden shifting method set forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).  To prove his *prima facie* case for discrimination, Plaintiff must present evidence that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he met the legitimate expectations of the employer; and (4) his employer treated similarly situated nonmembers of the protected class more favorably. <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973), <u>Cheek v. Peabody Coal Co.</u>, 97 F.3d 220, 203 (7th Cir. 1996).  *See also* <u>Johnson v. Cambridge Industries, Inc.</u>, 325 F.3d 892,895 (7th Cir. 2003).

Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to produce some legitimate nondiscriminatory reason for the challenged employment decision.  <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).  If the defendant produces the requisite legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to prove by a preponderance of evidence that the reasons offered by the defendant were a pretext for discrimination.  <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).  The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well considered.  <u>Stewart v. Henderson</u>, 207 F.3d 374, 378 (7th Cir. 2000).

12

The court does not sit as a superpersonnel department that reexamines an employer's business decisions. Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). The only concern is whether the legitimate reason provided by the employer is in fact a true one. Stewart, 207 F.3d at 378. Unless this nondiscriminatory explanation is false -- not just an overreaction, but a lie, the defendants must prevail. (*See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 144-146 (2000); and Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997) (where the court held that the employer prevails if it honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless).

"Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir. 1996) (citation and internal quotation omitted). In determining pretext, this Court employs a three-part test. "A plaintiff can prove the incredibility of the employer's proffered reason for the termination, and thereby demonstrate pretext, by showing that the employer's proffered reasons are (1) factually baseless, (2) not the actual motivation for the discharge, or (3) insufficient to motivate the discharge." Tincher, 118 F.3d at 1130 (citation omitted).

### 4.    Racial Harassment

Title VII provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

In a race discrimination charge based on a hostile work environment, the critical inquiry is whether members of one race are exposed to disadvantageous terms and conditions of employment to which members of the other race are not exposed.  <u>Parkins v. Civil Constructors of Ill., Inc.</u>, 163 F.3d 1027, 1032 (7th Cir. 1998); <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998).  Inappropriate conduct that is inflicted regardless of race is outside the statute's ambit, <u>Holman v. State of Indiana</u>, 211 F.3d 399, 403 (7th Cir. 2000), and an employer cannot be held liable for creating a hostile  work environment unless the hostility is motivated by race.  <i>See</i> <u>Heuer  v. Weil-Mclain</u>, 203 F.3d 1021, 1024 (7th Cir. 2000).

In the context of a hostile work environment claim, the term "harassment" is expansive.  It encompasses all forms of conduct that unreasonably interfere with the plaintiff's work performance or create an intimidating, hostile or offensive work environment. <i>See</i> <u>Mckenzie v. Illinois Department of Transportation</u>, 92 F.3d 473, 479 (7th Cir. 1996).

In order for plaintiff to establish a prima facie case of hostile work environment racial harassment, she must show that:  (1) she was subjected to unwelcome racial harassment; (2) the harassment was based on her race; (3) the racial harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability.  <u>Rennie v. Dalton</u>, 3 F.3d 1100, 1107 (7th Cir. 1993); <u>Guess v. Bethlehem Steel Corp.</u>, 913 F.2d 463, 465 (7th Cir. 1990).  Hostile environment racial harassment violates Title VII only if it is so severe or pervasive that it alters the terms and conditions of the victim's employment.  <u>Meritor Savings Bank v.</u>

<u>Vinson</u>, 477 U.S. 57, 67 (1986).  In assessing the severity and pervasiveness of the conduct, the Court looks to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Smith v. Shehan</u>, 189 F.3d 529, 533-534 (7th Cir. 1999).  Isolated and innocuous incidents will not support a hostile environment claim.  <u>Dey v. Colt Construction & Development Co.</u>, 28 F.3d 1446 (7th Cir. 1994).  Multiple incidents of improper conduct spread out over a period of time are not sufficient to establish that the conduct is so pervasive as to alter the conditions of employment.  <u>McKenzie v. Illinois Department of Transportation</u>, 92 F.3d 473 (7th Cir. 1996).  In conducting its Title VII analysis, the district court is required to apply an objective standard and consider whether a reasonable person would perceive his or her environment to be hostile or abusive.  <u>Baskerville v. Culligan International Corp.</u>, 50 F.3d 428 (7th Cir. 1995), <u>Faragher v. Boca Raton</u>, 524 U.S. 775 (1998).

Title VII is not directed against unpleasantness per se but only against discrimination in the conditions of employment.  <u>Carr v. Allison Gas Turbine Division, General Motors Corp.</u>, 32 F.3d 1007, 1009 (7th Cir. 1994).  Simple teasing, offhand comments, and isolated incidents, unless extremely serious, do not establish actionable harassment.  *See* <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 778 (1998).

**5.   Basis of Employer Liability**

An employer's liability for hostile work environment depends upon whether the harasser is the victim's supervisor or merely a co-employee.  <u>Parkins v. Civil Constructors</u>

15

of Illinois Inc., 163 F. 3d 1027, 1033 (7th Cir. 1998).[1]  Harassment by co-workers differs from harassment by supervisors.  Hunter v. Alliis-Chalmers Corp., 707 F. 2d 1417, 1422 (7th Cir. 1986).  In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S Ct. 2257, 141 L. Ed. 2d 633(1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S Ct. 2275, 141 l. Ed. 2d 633 (1998), the Supreme Court held that employers are strictly liable for a supervisor's sexual harassment of a subordinate, but that employers may avoid that liability by proving an affirmative defense:  An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.  When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c).  The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Shaw v. AutoZone, Inc. 180 F.3d 806, 810 -811 (7th Cir.1999);  Hill v. American General Finance, 218 F. 3d 639 (2000); Hall v. Bodine Electric, Co, 276 F. 3d 345, 545-55 (7th Cir. 2002). While proof that an employer had promulgated an anti-harassment policy with complaint procedures is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed

---

[1] The Parkins court defined supervisor for Title VII purposes as a person who is vested with the authority to hire, fire, demote, promote, transfer, or discipline an employee.  Parkins. 163 F. 3d at 1033.  Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for the purpose of imputing liability to the employer.

in any case when litigating the first element of the defense.  Hill v. American General Finance, 218 F. 3d 629 (2000).  And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.  Hill v. American General Finance, 218 F. 3d 629 (2000);  Parkins v. Civil Constructors of Illinois Inc., 163 F. 3d 1027, 1003 (7th Cir. 1998).

IV.    ARGUMENT

   1.    ALL OCCURRENCES PRIOR TO FEBRUARY 21, 2001, ARE OUTSIDE THE 300 DAY FILING REQUIREMENT AND PLAINTIFF'S RACIAL HARASSMENT CLAIMS ARE OUTSIDE THE SCOPE OF HIS EEOC CHARGE.

   In order to bring an action pursuant to Title VII, Plaintiff must:  (1) file a charge with (EEOC) within 300 days of the alleged discriminatory conduct, and (2) file a civil action within 90 days after receiving his right to sue letter from the EEOC.  Pack v. Marsh, 986 F.2d 1155, 1158 (7th Cir. 1993), Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir.1985), and Shanoff v. Illinois Department of Human Services, 258 F.3d 696, 701 (7th Cir. 2001).  Exhausting administrative remedies is a prerequisite for bringing suit under Title VII.  Volovsek v. Wisconsin Dept. Of Agr., Trade and Consumer Protection, 344 F.3d 680 (7th Cir. 2003).  Failure to do so bars the litigation with respect to those claims.  Hall v. Bodine Electric., 276 F.3d 345, 353 (7th Cir. 2001).

   Plaintiff filed his EEOC charge on December 18, 2001.  (Exhibit B).  Three-hundred days prior to the filing date of the EEOC charge is February 21, 2001.  Therefore, all alleged discriminatory conduct that occurred prior to February 21, 2001 is time-barred.  In

Plaintiff's deposition, he testified to the following events that he deemed to be discrimination or harassment:

1)  In 2000, Mr. Johnson received a ten day suspension that was ultimately reversed. (Exhibit A, Page 47);

2) Mr. Johnson believes that Becky Jones forced Nora Harms to give him a bad job evaluation for the period January 31, 2000 to December 31, 2000.  (Exhibit A, p.75);

3)  Mr. Johnson was issued an oral reprimand on April 25, 2001 for violating DCFS confidentiality policy, which was later reduced by management to a counseling session.  (Exhibit D; Exhibit I);

4)  Mr. Johnson believed that management was watching him because he was black.  (Exhibit A, Page 39-40);

5) Mr. Johnson felt that he was being discriminated against because Steve Bryson was being taken out of case rotation while he was not.  (Exhibit A, p. 37); and

6)  Mr. Johnson felt he had more cases than his white co-workers. (Exhibit A, p. 41).

In his deposition, Plaintiff placed much emphasis on his receipt of a ten day suspension that occurred in June 2000, a discrete act which was ultimately rescinded. (Exhibit A, p 47). Notably, Plaintiff's EEOC charge and Complaint indicate that the first date of discrimination occurred on February 8, 2001. (Exhibit B).  The ten day suspension should be barred as being beyond the scope of the EEOC charge and beyond the 300 day filing requirement.  Furthermore, Plaintiff admitted that he was not referring to the ten day suspension in his EEOC charge.  Rather, Plaintiff testified that his EEOC charge referred to his receipt of an oral reprimand that was reduced to an oral counseling for breach of

confidentiality.  (Exhibit A, p 26-27).   As the ten day suspension is beyond the 300 day filing requirement and was not referenced in Plaintiff's EEOC charge, this claim should not be considered by this Court.

In addition, Plaintiff's negative job evaluation, also a discrete act, is also beyond the scope of his EEOC charge and was for a time period prior to February 21, 2001.  As such, the negative job evaluation claim should not be considered.

Plaintiff's complaint that Steve Bryson was taken out of case rotation is also beyond the scope of the EEOC charge and beyond the 300 day filing requirement.  Steve Bryson was a Child Protection Investigator who left the Urbana field office in March of 2000, well beyond the 300 day filing requirement.  (Exhibit C).  Therefore, any alleged discriminatory treatment relating to Steve Bryson should not be considered by the Court.

The Seventh Circuit has noted the importance of an EEOC charge because it serves the dual purpose of notifying the employer of the alleged discriminatory acts and providing the EEOC an opportunity to investigate the veracity of those allegations.  Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 542 (7th Cir.1988).  It also "affords the EEOC 'an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party [is] permitted to file a lawsuit.'"  Babrocky, 773 F.2d at 863 (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974)).  "Thus the filing requirement is central to Title VII's statutory scheme."  Id.  Only after the EEOC has completed its investigation and issued a right to sue letter may a plaintiff seek judicial relief.  Alexander, 415 U.S. at 47.

The "failure to file a charge that encompasses all of the allegations in the complaint filed on the basis of the charge is very similar to the timeliness requirement."  Babrocky,

773 F.2d at 863.  The scope of the federal judicial proceeding is limited by the nature of the charge filed with the EEOC.  Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992).  The Seventh Circuit has affirmatively held that "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."  Id.

Plaintiff's EEOC charge alleges that on or about June 1, 2001, he received discipline while his non-black coworkers did not and that from February 8, 2001 his work was scrutinized more than his non-black coworkers. (Exhibit B).  Plaintiff's Complaint, however, goes beyond the scope of his EEOC charge by alleging for the first time that he was subject to a racially hostile work environment.  The allegations in Plaintiff's EEOC charge of disparate treatment in the receipt of an oral counseling and his work being scrutinized more than his white co-workers is not reasonably related to a claim of a racially hostile work environment.  See Rush v. McDonald's Corp., 966 F.2d 1104 (holding that a claim of racial discrimination (disparate treatment) is not reasonably related to a claim of racial harassment); See also, Cheek v. Peabody Coal Co., 97 F.3d 200, 202-03 (hostile work environment claim is not within the scope of disparate treatment claims).

Therefore, all incidents prior to February 21, 2001 are barred by the 300 day filing requirement and Plaintiff's claim of racial harassment is outside the scope of his EEOC charge.

### 2.   PLAINTIFF CANNOT PROVE HIS PRIMA FACIE CASE OF RACE DISCRIMINATION.

Plaintiff alleges that the Department discriminated against him on account of his race when the Department issued him an oral counseling and scrutinized his work after February 8, 2001 because of his race.  Because Plaintiff presents no direct evidence of

race discrimination, he must proceed under the burden shifting method set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). To prove his *prima facie* case for discrimination, Plaintiff must present evidence that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he met the legitimate expectations of the employer; and (4) his employer treated similarly situated nonmembers of the protected class more favorably. McDonnell Douglas v. Green, 411 U.S. 792 (1973), Cheek v. Peabody Coal Co., 97 F.3d 220, 203 (7th Cir. 1996). *See also* Johnson v. Cambridge Industries, Inc., 325 F.3d 892,895 (7th Cir. 2003). Plaintiff simply cannot establish his prima facie case.

### A.    Plaintiff did not suffer an adverse employment action.

An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998); Stutler v. Illinois Dep't of Corr., 263 F.3d 698, 703 (7th Cir. 2001).

Only those acts resulting in adverse employment actions are cognizable under Title VII. *See, e.g.*, Simpson, 196 F.3d at 876. Although the courts have defined adverse employment actions "quite broadly," Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996), adverse actions must be materially adverse to be actionable, meaning more than a "mere inconvenience or an alteration of job responsibilities." Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993). For example, a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

21

diminished material responsibilities, or other indices that might be unique to a particular situation."  The Seventh Circuit has recognized that "not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions that an  employee did not like would form the basis of a discrimination suit."  <u>Smart</u>, 89 F.3d at 441.

_____None of the harms complained of in Plaintiff's EEOC charge rise to the level of an actionable adverse action.   In the case at bar, Plaintiff alleges that the adverse employment action he received on or about June 2, 2001 was an oral reprimand that was reduced to an oral counseling.  (Exhibit A, p. 26-27).  The Seventh Circuit in <u>Oest v. Illinois Dept. of Corrections</u> has specifically held that an oral reprimand and counseling are not adverse employment actions.  240 F.3d 605, 613.  As such, Plaintiff has failed to prove that he suffered an adverse employment action as defined by Seventh Circuit law.

Plaintiff also alleges that from February 8, 2001, his work was scrutinized more than his white co-workers.  The only harms Plaintiff referred to in his deposition that occurred during this time frame (other than his oral counseling) are receiving more cases than his co-workers (Exhibit A, p. 41) and management watching him (Exhibit A, p. 39).  Plaintiff also complains that Steve Bryson was taken out of case rotation while he was not. However, Steve Bryson no longer worked in the Urbana field office as of March 2000. (Exhibit C).  Therefore, this complaint is outside the scope of the EEOC charge.

Moreover, even if it was timely, Plaintiff's claim that Steve Bryson was taken out of case rotation while Plaintiff was not, still fails.  According to Nora Harms, Steve Bryson was taken out of rotation due to his inadequate case work.  (Exhibit C).  Despite Plaintiff's

22

opinion that this was somehow better treatment to be taken out of case rotation, it was due to Mr. Bryson's ill work performance.

In <u>Griffen v. Potter</u>, the court recently found that a plaintiff's complaint of receiving more difficult cases and additional work were not adverse employment actions. 356 F.3d 824, 829 (7th Cir. 2004)(citing <u>Johnson v. Cambridge Indus.</u>, 325 F.3d 892, 901 (7th Cir. 2003))(finding harder work assignment not to be adverse employment actions)(other citations omitted). *See also* <u>Grube v. Lau Indus.</u>, 257 F.3d 824 (7th Cir. 2001)(holding additional job responsibilities are not adverse employment actions). Notably, Plaintiff testified that he was not the only Investigator who felt that he had a high case load. (Exhibit A, p. 43). More importantly, there is no evidence to support that the Plaintiff suffered any type of a tangible job consequence as a result of allegedly having more cases.

Furthermore, the Seventh Circuit has held that unfair reprimands and negative job evaluations are not adverse employment actions when, as here, plaintiff has not proven he suffered a tangible job consequence. <u>Grube v. Lau Indus.</u>, 257 F.3d 723, 729 (7th Cir. 2001). Thus, Plaintiff's complaint of a negative job evaluation is also not an adverse employment action.[2]

Finally, Plaintiff's Complaint alleges that as a result of the "adverse employment actions" he was forced to take a geographical transfer to the Aurora field office, which has a higher cost of living. Becky Jones and Jamie Ralph testified that they have no job responsibilities for either the Peoria or Springfield Sub-Region of DCFS. Thus, Plaintiff's

---

[2]In fact, when Plaintiff was transferred, his income increased by approximately 70%.

claim that he had to relocate to Aurora to escape these individuals' supervision is simply without merit.  Moreover, the facts in this case indicate that as a result of Plaintiff's request for a geographical transfer he went from living in a "bare minimum" apartment to living in a "country club" apartment complex to buying his own house in the St. Charles-Gevena, IL area.  (Exhibit A, p. 111-112).  Plaintiff's salary went from around $54,000 in Urbana to $92,000 in the Aurora field office.  (Exhibit A, p. 119).  Simply put, Plaintiff cannot prove that he suffered an adverse employment action, much less a tangible job consequence. Therefore, Plaintiff has failed to prove his prima facie case and summary judgment should be entered in favor of Defendant.

### B.    Plaintiff has failed to prove that similarly situated employees received more favorable treatment.

#### i.  Receipt of oral counseling.

To establish that two individuals are similarly situated, a showing must be made by the Plaintiff that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating circumstances as would distinguish their conduct or the employer's treatment of them." Snipes v. Illinois Dept. of Corrections, 291 F.3d 460 (7th Cir. 2002)(quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000)).  In Snipes, the plaintiff complained that other correctional officers with the same job description and subject to the same rules were disciplined less harshly for the same attendance violations.  Even with all the similarities, the court found that the employees were still not comparable because they had different supervisors. Id at 463.  Different employment decisions, concerning different employees, made by different supervisors are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may

24

exercise their discretion differently.  Weisbrot v. Medical College of Wisconsin, 79 F.3d 677, 683 (7th Cir. 1996).

Plaintiff's EEOC charge states that he was disciplined for violating a company policy while his non-black co-workers were not disciplined for violating the same policy.  Plaintiff testified that his EEOC charge was referring to his receipt of an oral counseling while Lisa Sanders, Sonja Cully, and Pam Wendt did not receive discipline.[3]  (Exhibit A, p. 27).  As Plaintiff clearly testified, Lisa Sanders, Sonja Cully, and Pam Wendt were all Child Welfare Caseworkers while Plaintiff was an Child Protection Investigator which have different job duties.  (Exhibit A, p. 27-28).  Furthermore, Plaintiff testified that his supervisor was Nora Harms while the alleged comparables' supervisor was Dawn Bachtold.  (Exhibit A, p. 28; Exhibit F).

In the absence a showing that the Plaintiff and the alleged comparable had the same job duties and reported to the same supervisor, the alleged comparable employee is not similarly situated to Plaintiff in all material respects.  See Patterson v. Avery Dennison Corporation, 281 F.3d 676, 680 (7th Cir. 2001).

### ii.    Alleged comparables regarding scrutiny of work.

In Plaintiff's deposition, he named numerous co-workers whom he thought was treated better in the terms and conditions of their employment, namely: Marianne Pointer, Janis Warwick-Caffrey, Charles Cochran, Dave Harman, Mike Fett, Steve Bryson, Lynda Morgan, and Stacey McAdams.  Many of these co-workers, while Child Protection

---

[3] Lisa Sanders, Sonja Cully and Pam Wendt actually received an oral counseling session for the same breach of confidentiality conduct Plaintiff was issued a counseling (Exhibits M, N, and O).  Nonetheless, this point is immaterial as Plaintiff cannot prove they are similarly situated in all material respects.

Investigators, did not have the same supervisor as the Plaintiff.   Others worked with Plaintiff well beyond the 300 day filing requirement.   Notably, Plaintiff never testified that any of the above-named individuals' work was scrutinized than his as his EEOC charge alleges.   Instead, Plaintiff complains more of his working conditions.

In the Urbana field office, there were two teams of Child Protective Investigators, team 3B09 and team 3B02.   Rufus Johnson was on team 3B09, which was supervised by Nora Harms.   (Exhibit C).  The second team, 3B02, was supervised by Deb Tullis.   (Exhibit C).   Nora Harms became the Child Protection Supervisor for team 3B09 in July of 1998.   (Exhibit C).    Marianne Pointer, Janis Warwick-Caffrey, Charles Cochran, Dave Harman, and Mike Fett were all members of team 3B02, and were never supervised by Nora Harms.   (Exhibit C).   Therefore, these individuals are not similarly situated in all material respects.   See Snipes, 291 F.3d at 463.

This leaves Lynda Morgan, Stacey McAdams, and Steve Bryson.   While Steve Bryson was an Investigator supervised by Nora Harms, he left the Urbana field office in March 2000 (Exhibit C).   Plaintiff's EEOC charge and Complaint only alleges discrimination from February 8, 2001.   Complaints of Steve Bryson are outside the scope of Plaintiff's EEOC charge and Plaintiff's Complaint, as well as beyond the 300 day filing requirement. In addition, there is no evidence that Steve Bryson and Rufus Johnson engaged in similar conduct or Plaintiff was adversely treated.   Therefore, Steve Bryson is not an appropriate comparable.

Similarly, Stacey Adams was only supervised by Nora Harms for the period of July 1998 to December 15, 2000.   (Exhibit C).  Thus, Ms. McAdams' employment was prior to the 300 day filing requirement and outside the scope of Plaintiff's EEOC charge.   In

addition there is no evidence that Plaintiff and Ms. McAdams engaged in similar conduct or that Plaintiff was adversely treated.

Finally, Lynda Morgan was an Investigator supervised by Nora Harms between February of 2001 until November 21, 2001.  The only reference Plaintiff makes to Lynda Morgan is that she lost five files and received no discipline.  However, Plaintiff testified that he has never lost case files or was ever disciplined for losing files.  (Exhibit A, p. 31). Therefore, Lynda Morgan and the Plaintiff did not engage in similar conduct or receive discipline.  As such, Lynda Morgan is not an appropriate comparable as defined by Seventh Circuit law.

Plaintiff presents nothing other than his own conclusory assertions that Caucasian employees were treated more favorably.  The Seventh Circuit, however, has upheld the entry of summary judgment against a Title VII plaintiff who presented only his own uncorroborated, conclusory statements that similarly situated co-workers were treated differently.  Oest v. Illinois Department of Corrections, 240 F.3d 605, 614 (7th Cir. 2001) citing Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 377 (7th Cir. 1998); Cowan v. Glenbrook Sec. Servs., Inc., 123 F.3d 438, 446 (7th Cir. 1997).   Accordingly, summary judgment should be entered in favor of Defendant.

      **3.**    **IF THIS COURT FINDS PLAINTIFF'S EEOC CHARGE IS REASONABLY RELATED TO A CLAIM OF HOSTILE WORK ENVIRONMENT, PLAINTIFF ALTERNATIVELY CANNOT PROVE ACTIONABLE RACIAL HARASSMENT**

An employee alleging racial harassment must prove that (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.

Williams v. Waste Management of Illinois Inc., 361 F.3d 1021, 1029, (7th Cir. 2004).  The workplace that is actionable is the one that is "hellish."  Perry v. Harris Chernin, Inc.  126 F.3d 1010, 1013 (7th Cir. 1997)*citing* Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995).  To assess the magnitude of the complained of conduct, the court examines all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Smith v. Sheahan, 189 F.3d 529, 533-34 (7th Cir. 1999).  Simply put, Title VII does not prohibit all verbal or physical harassment in the workplace.  *See* Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S. Ct. 998 (1998).  The Seventh Circuit has noted that isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment.  *See* Koelsch v. Beltone Elecs. Corp., 46 F.3d 705, 708 (7th Cir. 1995).  "The occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers" generally does not create a work environment that a reasonable  person would find intolerable."  Baskerville,50  F.3d at 430.

### A.    Plaintiff was not subject to harassment and the alleged conduct was not severe or pervasive.

The Supreme Court declared, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.  Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275 (1998).

In this Circuit, it is well established that there is a "safe harbor for employees in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to

make a reasonable person believe that he has been discriminated against." Galloway, 78 F.3d at 1168.

In this case, Plaintiff apparently sees racial discrimination in the shadows. While he believes that management at the Urbana field office are racist, even he admits he has no proof. (Exhibit A, p. 67-68). Plaintiff admits that he never heard management refer to anyone in any type of negative or racial connotation and there were no physical threats of harm. (Exhibit A, p. 106). In addition, Plaintiff believes that he had a higher number of cases assigned to him, but recalls other people on his team complaining about the number of high case load as well. (Exhibit A, p. 41). Finally, plaintiff was given an oral counseling. (Exhibit I). However, the record indicates his alleged comparables were also given an oral counseling for the same incident. (Exhibits M, N, O). Taken together, these incidents do not rise to harassment or a hellish work environment so severe and pervasive to alter his working conditions. Moreover, the record is devoid of any evidence that Plaintiff's complaints stem from racial animus on the part of Defendant. *See* Burlington Ind. v. Ellerth, 524 U.S. 775 (1998). Accordingly, the Defendant is entitled to summary judgment.

### B.    There is no basis for employer liability.

An employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. Faragher, 524 U.S. at 807-08; *see also* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998). When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . Id. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly

any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . <u>Id.</u>

### C.    Jamie Ralph and Becky Jones are not "Supervisors" for purposes of Title VII.

In order for a Plaintiff to establish a material fact that a supervisor engaged in harassment, it is not enough that a plaintiff point to evidence that anyone with managerial authority engaged in harassment but rather he must prove that the harasser served specifically as his supervisor. <u>Rhodes v. Illinois Dept. Of Trans.</u>,359 F.3d 498, 506 (7th Cir. 2004).  For purposes of Title VII, "supervisor" is a legal term of art, and "an employee merely having authority to oversee aspects of another employee's job performance does not qualify as a supervisor in the Title VII context." <u>Id</u>.  Instead, an employer is only subject to vicarious liability for an actionable hostile environment created by a supervisor who has the authority to hire, fire, demote, promote, transfer, or discipline employees.  <u>Hall v. Bodine Electric Co.</u>, 276 F.3d 345, 355 (7th Cir. 2002).

In this case, Jamie Ralph or Becky Jones were cloaked with sufficient authority to be considered a supervisor for Title VII purposes.  Both Jamie Ralph and Becky Jones testified that authority is limited to merely recommending employee discipline.[4]  Therefore, there can be no supervisor harassment.

---

[4] Notably, Plaintiff testified that "Jamie has no power.  He was a puffy for Becky Jones."  Furthermore, while Plaintiff testified that the "orders" were coming from Becky Jones, he stated he has no such proof.  (Exhibit A, p. 68).

An employer's legal duty in co-employee harassment cases "will be discharged if it takes 'reasonable steps' to discover and rectify acts of" harassment by its employees. Id. (citing Parkins v. Civil Constructor of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).

The undisputed fact that DCFS had an anti-discrimination policy in effect that set forth an effective grievance mechanism satisfies the first Ellerth prong.  *See* Shaw v. Autozone, Inc., 180 F.3d 806, 812 (7th Cir. 1999); Gentry v. Export Packaging Co., 238 F.3d 842, 847 (7th Cir. 2001).   The then Chief EEO Officer of the DCFS Office of Affirmative Action, Al Lambert, testified that the Department has had in place an anti-discrimination policy since his inception with the office in 1980 (Exhibit P), and since the inception of Plaintiff's employment with the Department, as well as when Plaintiff filed his EEOC charge.  (Exhibit P).   Mr. Lambert also testified that DCFS disseminates its nondiscrimination policies to its employees through its employee handbook, office posters, office pamphlets, and training sessions.  (Exhibit P).  Employees receive training on discrimination and harassment at their inception with the Department and how and where to file a complaint of discrimination or harassment.  (Exhibit P).  The record is clear that this policy was distributed to Plaintiff on at least April 25, 1997, by proof of Plaintiff's signed receipt of the employee handbook.  (Exhibit V).

Second, Plaintiff failed to report the alleged conduct to any one or office until after he requested his geographical transfer in December 2001.  (Exhibit A, p. 102).  Plaintiff complains of a racially hostile work environment, but only reported it for the first time in December 2001.  Plaintiff's failure to report satisfies DCFS's burden under the second prong of the Ellerth affirmative defense.  A demonstration of an unreasonable failure to use

any complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense". Ellerth, 118 S. Ct. at 2270.

The uncontested evidence establishes that the DCFS Office of Affirmative Action received Plaintiff's EEOC charge of discrimination on or about January 9, 2002, and immediately investigated and responded on or about January 31, 2002. (Exhibit P). At no time prior to filing his December 18, 2001 EEOC charge did Plaintiff file an internal or external complaint of discrimination. (Exhibit A, p. 19; 22; Exhibit P). Notably, Plaintiff alleges no discrimination or harassment after the filing of his EEOC charge. In fact, Plaintiff testified that when the Child Protection Manager, Jamie Ralph, found out about Plaintiff's EEOC charge, he was "begging" Mr. Johnson to stay, and told Mr. Johnson that they "can work something out." (Exhibit A, p. 85).

The record reveals that the Department took reasonable steps to investigate and respond to Plaintiff's charge of discrimination and that Plaintiff unreasonably failed to take advantage of such procedures to avoid harm otherwise. Therefore, there is no employer liability.

### 4.     NO TANGIBLE EMPLOYMENT ACT WAS TAKEN.

Even if this court finds that Jamie Ralph and Becky Jones are "supervisors" for purposes of Title VII, no tangible employment was taken against Plaintiff. Therefore, the employer may assert its Ellerth affirmative defense. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761. Only those acts resulting in

adverse employment actions are cognizable under Title VII.  Oest v. Illinois Department of Corrections, 240 F.3d 605, 612-613 (7th Cir. 2001).

In the case at bar, Plaintiff has suffered no tangible employment action.  Plaintiff complains of his oral reprimand, a negative job evaluation, and being assigned more cases.  However, the Seventh Circuit has held that unfair reprimands and negative job evaluations are not adverse employment actions.  Grube v. Lau Indus., 257 F.3d 723, 729 (7th Cir. 2001).  Furthermore, increased job responsibilities is not a tangible employment action.  Griffen v. Potter, 356 F.3d 824, 829 (7th Cir. 2004)(citing Johnson v. Cambrinde Indus., 325 F.3d 892, 901 (7th Cir. 2003))(finding harder work assignment not to be adverse employment actions)(other citations omitted).  See also Grube v. Lau Indus., 257 F.3d 824 (7th Cir. 2001)(holding additional job responsibilities are not adverse employment actions).  As a reasonable person can imagine, the job of a Child Protection Investigator is numerous and not easy, but even Plaintiff testified that other people on his team felt they had a high case load as well.  (Exhibit A, p. 41).  Plaintiff cannot prove he suffered any tangible employment actions.  Therefore, his claim fails and summary judgment should be entered in favor of Defendant.

Since no tangible employment action resulted, DCFS is entitled to the Ellerth defense: (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that Plaintiff failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise.  Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807.

As discussed above, the Department had in place an anti-discrimination policy at all times relevant to the Complaint that was sufficiently disseminated to its employees.

(Exhibit P).  As soon as Plaintiff filed his EEOC complaint, the Department responded within the very same month.  (Exhibit P; Exhibit D).

The Seventh Circuit has stated that harassment policies are not self-enforcing. Shaw, 180 F.3d at 812.  Therefore, until the Plaintiff reported, DCFS cannot be liable for any harassment.  The fact that Plaintiff requested a voluntarily transfer before even notifying his employer of the alleged discrimination indicates Plaintiff's failure to take advantage of any preventive or corrective activity to avoid harm otherwise.

Accordingly, Plaintiff cannot establish employer liability and summary judgment should  be granted in favor of the Department.

WHEREFORE, Defendant, ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, respectfully requests this Court to enter summary judgment in its favor.

Respectfully submitted,

ILLINOIS DEPARTMENT OF CHILDREN
AND FAMILY SERVICES,

Defendant,

LISA MADIGAN, Attorney General of the
State of Illinois,

Stephanie L. Shallenberger, #6279773
Assistant Attorney General                                    Attorney for Defendant,
500 South Second Street
Springfield, IL 62706
(217) 785-4555
Of Counsel.                                    By: /s/ Stephanie L. Shallenberger
                                                    Stephanie L. Shallenberger
                                                    Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2004, I electronically filed the foregoing Memorandum of Law in Support of Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Robert G. Kirchner
Lerner & Kirchner
100 Trade Center Dr., Suite 402
Champaign, IL 61824
rgk-kirchnerlaw@sbcglobal.net

and I hereby certify that on September 28, 2004, I mailed by United States Postal Service, the document to the following non-registered participant:

None.

Respectfully submitted,

/s/ Stephanie L. Shallenberger
Stephanie L. Shallenberger, #6279773
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 785-4555
Facsimile:  (217) 524-5091
sshallenberger@atg.state.il.us